**COMMERCIAL TRAVELERS CASUALTY CO. v. JOHNSON et ux.**

No. 15009.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 4, 1949.

Pannell, Leeton & Brewster and Harris Brewster, all of Fort Worth, for appellant.

Ronald W. Aultman and D. A. Webb, both of Fort Worth, for appellee.

SPEER, Justice.

Appellees, Daniel Grover Johnson and wife, Ruth Marilla Johnson, sued appellant, Commercial Travelers Casualty Company, on a hospital and surgery policy of insurance.

For purposes of this appeal it is thought necessary only to state that appellees (plaintiffs below) pleaded that for a named premium paid by them appellant issued its policy contract insuring appellees "Against loss resulting from hospital confinement and surgical operation by bodily injury effected solely through accidental means or by sickness or disease, the cause of which had its beginning after thirty days from date of issue hereof." That the policy was issued August 20, 1947 and that all items claimed had their beginning about January 16, 1948 and more than thirty days after the effective date of the policy; that the policy provided that in case of sickness or surgery having its beginning more than thirty days after the effective date of the policy where hospitalization was required, appellant would pay $7.50 for a hospital room and general nursing; $5.00 for ambulance to or from the hospital and if surgery was necessary it would pay $15.00 for operating room; $10.00 for anesthetic; $3.00 for laboratory fee; and $75.00 for an appendectomy. They further claimed other items but they were disallowed by the court and we need make no further reference to them. They alleged that Mrs. Johnson was taken very sick on January 16, 1948 and was sent to a hospital for surgery and that an operation was performed about midnight of that date.

Appellant plead general denial and special defenses, only one of which is involved here, it being a provision of the policy found on the fourth page captioned, "Exceptions and Limitations" with the subheading, "Waiting Period." We will quote

and comment on this provision later in this opinion.

At the conclusion of taking testimony, both sides requested peremptory charges to the jury. That of appellant was refused and appellees' was given, requiring the jury to return a verdict in their favor for $212.00. Judgment was entered for that amount and this appeal followed.

There is no conflict in the testimony; only appellees (the Johnsons) testified; in addition there were many identified exhibits introduced without objections and certain stipulations of fact were filed. One side or the other should have had an instructed verdict. The material facts appear to be as alleged by the appellees.

Appellant's first point of error complains because the court refused its requested summary instruction based upon the claim that appellees had failed to establish a right of recovery in that they had not attempted to prove that the items for which they sued were "in accordance with the usual, customary and regular charges for such services and materials in the immediate locality where such services and materials were rendered and furnished."

Points 2, 3, 4 and 5 assert error in the court giving appellees' summary instruction based upon the absence of any evidence that the items for which they sued were in accordance with the usual, customary and regular charges in that locality.

We shall discuss these points together because if appellees were required in this case to prove that the items for which they sued were usual, customary and regular charges in that locality, as here contended by appellant, and having failed to make this proof, appellant was entitled to a judgment. But if such proof was not necessary, appellees should recover as against the errors asserted by appellant.

On page 2 of the policy there is a provision called "Part C" which reads: "The benefits under all parts of this policy are payable only if such hospitalization and/or services, etc., be at the direction or under the supervision of some regularly licensed and practicing physician or surgeon and for no greater length of time than may be deemed necessary by such physician or surgeon; and provided further that the charges made for such services and/or materials, etc., are in strict accordance with the usual, customary and regular charge made for such services, in the immediate locality where such services and/or materials, etc., may be rendered."

We are keeping in mind that this is a suit for reimbursement for hospitalization and operation under a written contract entered into for a valuable consideration. Under "Hospitalization" the contract provides, "If such sickness or injury shall require the insured to be confined as a resident patient within an incorporated and licensed Hospital, the Company will reimburse the Insured for the actual Hospital Expense, or will pay the Hospital, if authorized by the insured to do so, for such expense as herein provided, subject however, to all the provisions and limitations herein set forth." Following this provision reference is made to the first page of the policy where it is provided that "Policy pays $7.50 per day for hospital room, board and general nursing." Next is a provision of $5.00 for ambulance to or from hospital; $3.00 general laboratory fee; $15.00 for operating room; $10.00 for an anaesthetic, and several other items not involved here.

Following the above quotation and items we find "Surgical Operation Indemnity"; which in part provides that the amounts stated in schedule of Surgical Operations are the maximum amounts payable. Under this caption there appears the item of $75.-00 for an appendectomy.

It is quite obvious that the primary purpose of this contract was that appellant would reimburse appellees for actual hospital and surgery expenses incurred by them, coming within the terms of the policy, in amounts which did not exceed those for the same items as named in the schedules in the policy, which amounts are recited to be "the maximum amounts payable."

We note by the judgment that appellees recovered $10.00 for ambulance service; $10.00 for an anaesthetic; $15.00 for the operating room; and $3.00 for laboratory fee. These are the identical amounts shown to have been paid by them and are

the same amounts provided in the policy for such items. The largest amount for a single item allowed was $98.00 for fourteen days in the hospital at $7.00 per day, whereas the policy provided for $7.50 per day. The next largest single item was $75.00 for an appendectomy; this was the maximum amount provided by the policy, whereas appellees actually paid $125.00; however, the excess paid is of no significance here.

■ We have reached the conclusion that so long as the items claimed and sued for by appellees do not exceed the maximum amounts promised by appellant to be paid for the corresponding items in the policy schedules, there is no good reason existing requiring appellees to prove that such amounts are usual, customary and regular charges in that locality. Appellees pleaded, testified and were corroborated that they had incurred and paid the several items of hospitalization and surgery sued for. By this suit they sought reimbursement from appellant under the terms of the policy. Appellant did not plead or in any way attempt to challenge the amounts of appellees' several items and claims sued for because they were not usual, customary and regular charges in that locality. Appellant does not complain under these points of error that it did not owe the claims, but contends that appellees should not be allowed a recovery when they had not proven the amounts to be usual, customary and regular charges, and that in the absence of such proof it should have had an instructed verdict.

Appellant cites and relies upon many cases growing out of torts and other kinds of claims for unliquidated amounts, in which the courts have held that to recover plaintiffs must allege and prove their claims were reasonable, and in some instances that plaintiffs must allege and prove that other items were necessary in their nature in addition to proof that they were reasonable in amounts. The rules above announced are well settled but we think they have no application in the instant case. We have been cited to no case, nor have we found one from an independent search which applies the above announced rule to cases of this

character. Viewing the situation as we do, we overrule the points of error under discussion.

Sixth and seventh points of error complain because the court refused appellant's requested peremptory instruction and gave one in favor of appellees, because the "undisputed evidence shows that the hospitalization of appellee involved in this suit and all other expenses incurred and sued for herein resulted from a surgical operation performed * * * less than 180 days after the policy was issued, all such losses being excepted from coverage under the terms of the policy."

The points last referred to involve a construction of that part of the policy pleaded by appellant and previously referred to by us above. On page 4 of the policy this appears: "Exceptions and Limitations, 1. Waiting Period—The insurance hereunder is against loss due to Hospital Residence and Surgical Operation (a) resulting from bodily injuries sustained after the effective date of Policy and provided such injuries were effected solely through accidental means; (b) resulting from sickness the cause of which had its beginning after this Policy has been maintained in force for not less than thirty days from the effective date of Policy; (c) resulting from surgical operation (except in connection with accidental injury) and/or any diseases which is not common to both sexes, the cause of which had its beginning after this policy had been maintained in continuous force for not less than 180 days after the effective date of Policy."

As we read the record we cannot agree with appellant that the hospitalization of Mrs. Johnson and all expenses thereby incurred resulted from an operation performed in less than 180 days after the effective date of the policy. The testimony shows without dispute that Mrs. Johnson became very sick with intense abdominal pains and ran a fever in the late afternoon of January 16, 1948. They called Dr. Anderson and he prescribed on the telephone for her. He called to see her at about eleven o'clock that evening and after giving her some "relief shots" ordered her sent

to the hospital. The doctor met appellees at the hospital and performed an appendectomy about midnight.

The parties stipulated that Dr. Anderson was a graduate of reputable medical college and a duly licensed practitioner; that on January 16, 1948 Mrs. Johnson suffered an attack of acute appendicitis; that Dr. Anderson was called and he immediately ordered her to the hospital; that she was hospitalized at about 11:15 P.M. and was operated about midnight; that Dr. Anderson found a diseased appendix and removed it; that Dr. Anderson ordered her to the hospital for the purpose of performing the operation and to give her such medical attention as he might deem necessary; that appendicitis is a disease common to both sexes.

It is claimed by appellant that under the facts of this case the provisions of the quoted "Exceptions and Limitations" negative its liability in this case. Hazarding repetition let us look at the provisions here involved. "The insurance hereunder is against loss due to Hospital Residence and Surgical Operation: (a) (not pertinent here); (b) resulting from sickness the cause of which had its beginning after this policy has been maintained in force for not less than thirty days from the effective date of policy." The introductory words must be read into subdivision (b), which means that the policy covers loss due to hospital residence and surgery resulting from sickness having its beginning after thirty days from the date of the policy. Mrs. Johnson was indisputably shown to have been sick after the thirty day period had expired; she had an attack of acute appendicitis; the doctor tried to relieve her but failed; he found that an operation was necessary, and ordered her to the hospital for that purpose. The surgery necessarily followed her attack and sickness. It cannot be said that her sickness in the afternoon resulted from the later operation. It appears from all this that subdivision (b) is clearly in keeping with the expressed general purposes of the policy covering the items claimed and sued for by appellees.

Adverting to the further provisions of the "Exceptions and Limitations" and by reading into subdivision (c) the substance of the introductory clause, we have: "This policy covers loss for hospitalization and operation (c) resulting from surgical operations * . * * and/or any diseases (sic) which is not common to both sexes, the cause of which (operation and/or disease) had its (or their) beginning" more than 180 days after the effective date of the policy.

As we construe subdivision (c) in this provision it limits appellant's liability for hospitalization and surgery resulting *from a disease not common to both sexes,* to instances in which the disease had its beginning after the policy had been maintained in effect for 180 days. It is true that subdivision (b) covered reimbursement by appellant for hospitalization and operations resulting from sickness which had its beginning more than 30 days from the effective date of the policy, yet subdivision (c) limits and negatively modifies (b) to the extent that if such hospitalization and operation resulted from a disease "not common to both sexes" there would be no liability unless the disease and operation had their beginning after the expiration of 180 days from the date of the policy.

Under the general rule of construction we must view the contract as a whole and give effect, if we can, to each and every part. It is clear to us that we can give effect to both subdivisions (b) and (c) in this contract; but since the parties have stipulated (if such was necessary) that an appendectomy, such as involved here, was common to both sexes, subdivision (c) has no application to this case.

Construction of provisions in insurance policies has been before our courts many times and some of the rules announced pertinent to the matters before us are: Reasonable efforts will be made to harmonize and give effect to all parts of the policy contract. 24 Tex.Jur. 700, sec. 25; when policies are written by insurer and are ambiguous in their terms, they will be construed most strongly against the insurer and in favor of the insured. Ibid, p. 703, sec. 27. Forfeiture provisions in contracts are not favored. "The law will seize upon even slight circumstances indicative

of an intention on its part to waive a forfeiture. To warrant a forfeiture, the language must be clear, plain and unequivocal." Ibid, p. 703–4, sec. 27.

The eighth point asserts error in giving apellees an instructed verdict based solely upon the testimony of appellees who are interested witnesses. Appellant cites many authorities in support of the general rule on the subject. In the instant case the verdict and judgment were not predicated alone upon the uncorroborated testimony of appellees. The parties stipulated that Mrs. Johnson became sick and suffered an attack of acute appendicitis on January 16, 1948, was sent by Dr. Anderson to the hospital at about 11:15 P.M. of that date and was operated about midnight. Receipted bills, canceled checks, and the policy were in evidence covering the items appellees testified they had paid. Most of the material facts testified to by appellees appear to find corroboration in the evidence and none of it was contradicted. We find no error in the complaint made in point eight.

Finding no reversible error under the points presented, they are overruled and the judgment of the trial court should be and it is accordingly affirmed.